UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**DANTE W.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00900-TPK

OPINION AND ORDER

## OPINION AND ORDER

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on September 22, 2022, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 7), and the Commissioner has filed a similar motion (Doc. 9). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I. BACKGROUND

On July 22, 2020, Plaintiff filed his applications for benefits, alleging disability since July 22, 2019. That application were denied initially and on reconsideration. An Administrative Law Judge then held a hearing on January 24, 2022. Plaintiff and a vocational expert, Christine Spaulding, testified at that hearing.

The ALJ issued an unfavorable decision on February 10, 2022. He found, first, that Plaintiff had not engaged in substantial gainful activity since his application date and that he had severe impairments including schizophrenia; depression, a bipolar disorder; an anxiety disorder; posttraumatic stress disorder; a history of polysubstance abuse; status post gunshot wound to the elbow; status post stab wound to the stomach; and status post open reduction and fixation of the left pinky finger fracture. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ determined that Plaintiff was able to perform a limited range of light work. He could not climb ladders, ropes, or scaffolds and could only occasionally balance, kneel, crouch, and stoop, while being totally unable to crawl. Additionally, the ALJ determined that Plaintiff could not operate foot controls or work around dangerous machinery, motor vehicles, unprotected heights, or vibrations, could

occasionally reach overhead but could reach frequently in all other directions, could frequently perform fine and gross manipulation, and was limited to the performance of simple, repetitive, and routine tasks which involved only simple decision-making, only occasional changes in routine, and only occasional contact with others.  After finding that Plaintiff, as so limited, could not perform his past relevant work as a food sales clerk, the ALJ, relying on testimony from the vocational expert, determined that Plaintiff could perform unskilled light jobs such as price marker, housekeeper/cleaner, and collator operator.  He also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises two issues, stated here *verbatim*:

> 1. The ALJ failed to properly evaluate the opinion of Dr. Ippolito.
>
> 2. The ALJ failed to build a logical bridge between the evidence of record and his findings.

Plaintiff's memorandum, Doc. 7-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 30 years old at the time of the administrative hearing, first testified that he completed the tenth grade and that he had never lived on his own.  He had not worked for several years, but did have a job working for his uncle in a family-owned restaurant.  He said he could no longer work due to weakness in his arm following a gunshot would and also because of his schizophrenia.  He also suffered from PTSD.  Plaintiff said he could still lift 30 pounds, however.

When asked about his memory, Plaintiff testified that he sometimes forgot medical appointments and his mind tended to drift.  He also said that he left school due to paranoia and that he heard voices.  He was able to socialize with family members and was using marijuana a few times a week, which calmed him down.  Plaintiff said he did some household chores and also watched television.

The vocational expert, Ms. Spaulding, testified that Plaintiff's past work was as a food sales clerk, which is a light job.  She was then was asked questions about a person with Plaintiff's vocational profile and who could work at the light exertional level but who had some postural, environmental, and manipulative limitations and who was limited to the performance of simple tasks involving only occasional changes to the work routine and occasional contact with others.  In response, she said that such a person could work as a price marker, as a cleaner/housekeeper, and as a collator operator.  She also

gave numbers for those jobs as they existed in the national economy. However, someone who also would be off task for 15% of the time and miss two days of work per month could not be employed, nor could someone who was occasionally insubordinate or who had monthly outbursts of destructive behavior.

### B. Medical Evidence

The relevant medical records show the following. Plaintiff underwent a mental health hospitalization in June, 2017 following some aggressive and delusional behavior and was discharged after improving with medication. He was almost immediately rehospitalized. In 2019, he was hospitalized again after his behavior made his mother feel unsafe. It was noted that he had a history of a gunshot wound to the abdomen and a knife wound in the back, and also that he had voluntarily discontinued mental health treatment. Later records indicate a history of both bipolar disorder and schizophrenia with paranoia and agitation, but those records also show that Plaintiff believed that schizophrenia was a misdiagnosis. At an assessment done in 2019 at the Erie County Holding Center, it was recommended that he receive mental health counseling.

In 2020, Plaintiff was seen at the emergency room after suffering a gunshot wound to his left shoulder. He was discharged on antibiotics. Plaintiff's mother died in 2020, and a note from February, 2021 indicates that he was still resistant to mental health treatment. He was hospitalized again that year for a number of days based on behavior described as irritability, guardedness, and paranoia, and on his discharge, it was recommended that he be transferred to a different facility for inpatient care, but that did not occur.

### C. Opinion Evidence

Plaintiff saw Dr. Ippolito for a consultative psychiatric evaluation on April 16, 2021. At that time, he was living with his fiancee and said that he had obtained his GED. He had not received mental health counseling for two years but was receiving medication once a month. Plaintiff reported depressed mood, fatigue, low energy, and social withdrawal. He also described mood swings and anger management issues and said that he had spent four months in jail after being arrested for possession of crack cocaine. His affect was restricted and his attention and concentration were intact but his memory skills were impaired. Dr. Ippolito believed that Plaintiff could follow instructions, sustain an ordinary work routine, interact with others, maintain concentration, sustain pace, and take appropriate precautions with moderate limitations. However, he had marked limitations in his ability to control his emotions and behavior. Substance abuse was a contributing factor. She believed that he would benefit for substance abuse evaluation and treatment. (Tr. 772-25).

Plaintiff also saw Dr. Liu that day for an internal medicine examination. He told Dr. Liu he suffered from whole-body pain and that he had been injured on multiple

occasions including being shot, stabbed, and attacked, leading to a facial bone fracture. On examination, he had some limitation in activities due to pain and straight leg raising was positive at 45 degrees. He showed some mild decrease in his left hand grip strength and in his ability to perform fine manipulation with that hand. Dr. Liu believed Plaintiff had a mild limitation for prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, and prolonged sitting and standing as well as a mild limitation for fine manipulation with the left hand. (Tr. 777-80).

The state agency reviewers reached the following conclusions. Dr. Stouter stated on May 27, 2021 that Plaintiff did not have a severe physical impairment, while Dr. Bhutwala thought that Plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, be punctual within ordinary tolerances, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruption from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. He was also moderately limited in his ability to deal with the public and to respond to criticism.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Evaluation of Dr. Ippolito's Opinion

As his first claim of error, Plaintiff argues that the ALJ did not properly analyze that portion of Dr. Ippolito's opinion where she concluded that Plaintiff had marked limitations in certain areas including regulating his behavior and emotions. In particular, he claims that the ALJ did not discuss whether her opinion was consistent with other evidence in the record, including the 2021 psychiatric hospitalization and the description of Plaintiff's behavior at that time. Plaintiff notes that the vocational expert testified that someone who could not control their emotions could not be gainfully employed. In response, the Commissioner contends that the ALJ took into account the two factors of consistency and supportability when determining the weight to be given to Dr. Ippolito's opinion and that he properly concluded that any marked limitations were due to medical noncompliance.

Plaintiff is correct that under the current regulations, the two factors of supportability and consistency are the most crucial when evaluating expert medical opinion. As this Court has said,

> [s]upportability and consistency are the most important of the five regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining three factors. *Id*. An ALJ's failure to explain the supportability and consistency of the medical opinions or prior administrative medical findings in the record is procedural error. *Loucks v. Kijakazi,* No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id*. (*quoting Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alterations omitted).

*Brianne S. v. Comm'r of Soc. Sec.*, 2023 WL 6225249, at *4 (W.D.N.Y. Sept. 26, 2023). To determine whether the ALJ applied these factors correctly, it is necessary to examine the ALJ's rationale for discounting those portions of Dr. Ippolito's opinion which, if accepted, would have led to a finding that Plaintiff was disabled.

The ALJ began his analysis of Plaintiff's mental limitations by noting that Plaintiff "continued to exhibited (sic) psychosis, paranoid delusions and physically aggressive behavior during periods of ongoing noncompliance." (Tr. 22). Conversely, the "record shows that when he did undergo regular outpatient treatment (and did have his medication actively monitored) his mood stabilized, his insight improved, and he felt better." *Id*. That stabilization was attributed

to his being "removed from frequent drug use" and being "give medication in addition to monitoring to make sure he did take his medication." (Tr. 23). The ALJ then gave some weight to the state agency psychological opinion that Plaintiff had limitations on his ability to perform some of the mental functions of work but that these limitations were moderate rather than marked. *Id*. Finally, turning to Dr. Ippolito's opinion, the ALJ said this:

> The psychological consultative examiner's opinion that the claimant had up to marked mental limitations is not persuasive (7F). The examiner's assessment that the claimant can perform a task requiring detailed instructions is not supported by same-day finding that the claimant does have memory limitations (which would limit him to unskilled work). Importantly, even if his concentration tested as unremarkable these memory limitation (as just stated)would limit him to simple work only since interference from those memory limitations would preclude him from performing complex tasks on a regular basis.
>
> That assessment is also not persuasive because there is no indication, at least objectively, in this report that the claimant has marked limitations in regulating his behavior and emotions, since he tested as having fair insight and judgment. Note that when the claimant is medication compliant, he is able to manage his behavior and regulate his emotions. His same day insight and judgment were adequate. He also tested as having an "aright" mood at the examination. Thus, nothing [in his] behavior at that examination, indicated that he would have a marked inability to control his behavior and emotions.

(Tr. 23-24).

As the Commissioner observes, it is not necessary for an ALJ to use any particular language in order to comply with the requirement that medical opinions be evaluated for supportability and consistency. Here, the ALJ extensively reviewed the evidence indicating that Plaintiff's episodes of severe mental symptoms coincided with the times when he was not taking medication. *See, e.g.,* Tr. 20-21. The ALJ noted that at other times, mental status exams were normal, *see id.*, and that Plaintiff stated that his medication was helpful when he took it and that his condition stabilized after each hospitalization. (Tr. 22-23). It was in this context that he evaluated Dr. Ippolito's opinion. The ALJ clearly viewed her more restrictive findings as inconsistent with, and not supported by, both the behavior she observed at the consultative examination and by the balance of the evidence. The Court has no difficulty in discerning the basis of the ALJ's decision on this issue, and finds that it was made in accordance with the applicable regulation. Consequently, this first issue does not provide any basis for a remand order.

### B. Logical Bridge

Plaintiff's second argument is that the ALJ did not build a "logical bridge" between the evidence of record and the residual functional capacity finding. To support this argument, he

notes that the ALJ did not fully accept the findings of any of the medical experts who expressed views about Plaintiff's physical capabilities, and that without other opinion evidence to support his conclusions, the ALJ improperly engaged in lay interpretation of the medical evidence and failed to provide an adequate explanation for his findings. He adds that the same flaw infects the mental residual functional capacity finding and that it may not properly be supported only by the opinion of a non-examining state agency reviewer. The Commissioner, in the opposing memorandum, points out that the ALJ actually found Plaintiff to be more limited than Dr. Liu, the consultative examiner, believed him to be, which is permissible under the applicable case law, and that the law also permits an ALJ to support a residual functional capacity finding with opinion evidence from a state agency reviewer so long as it is consistent with the other evidence of record.

The ALJ explained how he made his physical residual functional capacity finding by, first, noting that in his testimony Plaintiff said he could lift 30 to 40 pounds. Then the ALJ summarized the results of an April, 2021 doctor's visit at which, other than hardware used to treat a fractured finger, the findings were normal. He noted that Plaintiff did not take medication for any physical condition. However, the ALJ believed that despite the lack of any significant physical impairments or limitations, the fact that he had suffered several gunshot wounds in the past reasonably limited him to light work activity. The ALJ then reviewed the consultative examiner's opinion and concluded that it was somewhat inconsistent with the findings made that day, including subjective complaints of whole body pain and objective evidence of some spinal abnormalities. All of this led the ALJ to decide that from a physical standpoint Plaintiff could do light work.

It is true, as Plaintiff asserts, that this conclusion is not directly supported by any specific medical opinion. It is also true, as the Commissioner points out, that the ALJ's residual functional capacity finding is more favorable to Plaintiff than any of the opinion evidence and that Plaintiff has not pointed out any evidence supporting an even more restrictive functional capacity finding. Both of these facts support the conclusion that a remand is not warranted for the reasons advanced by Plaintiff. This Court has said that "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Baker o/b/o Baker v. Berryhill*, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018). That is especially true when there is other evidence suggesting a more restrictive functional capacity finding than expressed by the medical experts. Further, "[i]t is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ." *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020). Plaintiff has not done that here. Consequently, this portion of Plaintiff's second argument lacks merit.

The other issue raised by Plaintiff under this claim of error relates to the ALJ's mental residual capacity finding. But that finding is both supported by the ALJ's decision to discount the more extreme mental limitations expressed by Dr. Ippolito - a decision which the Court has found the ALJ was entitled to make - and by the state agency reviewer's opinion. It is also supported by those portions of the record indicating that Plaintiff's behavior moderated when he took his medication. And the Commissioner is correct that it is correct that "'[a]n ALJ may rely

on a non-examining state agency consultant's opinion when it is supported by other record evidence,'" *Williams v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 411, 416 (W.D.N.Y. 2019) *quoting Kelley S. v. Comm'r of Soc. Sec.*, 2019 WL 529909, at *7 (N.D.N.Y. Feb. 11, 2019). That is the case here. Consequently, the Court will affirm the ALJ's decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

<u>/s/ Terence P.  Kemp</u>
**United States Magistrate Judge**